# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

PAIGE LAINE KHYEL TAYLOR,

      Plaintiff,

v.                        Case No.:    8:20-cv-00687-CEH-SPF

DEPUTY WAYNE WANGER, et al.,

      Defendants.

_____/

## SHERIFF BOB GUALTIERI'S DISPOSITIVE MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

COMES NOW, Defendant, BOB GUALTIERI, in his official capacity as Sheriff of Pinellas County, ("PCSO") by and through the undersigned counsel and files this Dispositive Motion for Summary Judgment against Plaintiff, PAIGE TAYLOR, pursuant to FED. R. CIV. P. 56 and states as follows:

### SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

As the nonmoving party, Plaintiff's burden requires her to go beyond the mere allegations in her complaint by providing either affidavits, depositions, answers to interrogatories and/or admissions in order to provide specific facts which

demonstrate a genuine issue of material fact. A fact is "material" if it "might affect the outcome of the suit under the governing law[.]" *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

### UNDISPUTED MATERIAL FACTS[1]

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *White v. Georgia,* 308 F. App'x. 796, 798 (11th Cir. 2010) (citing *Scott v. Harris,* 550 U.S. 372, 380 (2007).[2] The undisputed material facts surrounding the excessive use of force and false arrest complained of by Plaintiff are set forth below:

### A. Traffic Stop

1. On March 25, 2016 at approximately 9:30 p.m., Gage Moore ("Moore") was driving a 2005 Dodge Ram pickup truck on Gandy Boulevard North and 4th Street North, St. Petersburg, Pinellas County, Florida.[3]

---

[1] The evidence supporting this Dispositive Motion has been attached as exhibits. Please note that many exhibits are properly authenticated and admissible for the purposes of this Dispositive Motion as they are public records. See FED. R. CIV. P. 901(b)(7); *Wells v. XPEDX*, Case No. 8:05-cv-2193, 2007 WL 2696566, at *3 (M.D. Fla. Sept. 11, 2007) and *United States of America v. Charboneau*, Case No. 5:04-cv-442, 2005 WL 2346947, at *5 (M.D. Fla. Sept. 26 2005).
[2] The evidence supporting this Dispositve Motion has been previously filed separately under Docket Entry 54. Reference to these materials will be designated by the docket number along with a citation to where in the document or video the facts are shown, such as [Doc.54 at page, paragraph and/or line reference, where applicable] for documents and [Doc.54 at time stamp] for videos.
[3] [Doc.33 at ¶10] & [Doc.54-1 at 2]

2.   Plaintiff was a passenger in the pickup truck laying down in the front seat.[4]

3.   Defendant, Wayne Wagner, ("Defendant Wagner") initiated a traffic stop on Moore because the truck's tag was assigned to another vehicle and because Moore's driver's license was habitually suspended.[5]

4.   As they were pulling into the Mobil gas station parking lot, Defendant Wagner saw Moore and Plaintiff switch seats.[6]

5.   Moore and Plaintiff switched seats after Moore stated to her, "just give him your license and nothing will happen. We'll be free to go."[7]

6.   Plaintiff stopped the truck so as to not hit the gas pump.[8]

7.   Defendant Wagner obtained Plaintiff's driver's license during the stop.[9]

### B.  Arrest of Gage Moore

8.   Defendant Wagner arrested him for being a habitual felony traffic offender.[10]

9.   While placing Moore into the back of the patrol vehicle, Plaintiff got out of the pickup truck and began to approach Defendant Wagner to ask him why Moore was being arrested.[11]

10. Plaintiff remained at least a car length away from Defendant Wagner.[12]

---

[4] [Doc.54-2, 50:5-10]

[5] [Doc.33 at ¶11]; [Doc.54-1 at 9-10]; [Doc.54-3 at 25:16-26:1] & [Doc.54-4 at 13:21-22]

[6] [Doc.54-1 at 10]; [Doc.54-3 at 26:10-21] & [Doc.54-5 at 5:24-6:1]

[7] [Doc.54-2 at 50:11-22 and 53:1-2] & [Doc.54-6 at 26:20-27:17]

[8] [Doc.54-2 at 51:7-11] & [Doc.54-6 at 5:8-10]

[9] [Doc.33 at ¶13]; [Doc.54-1 at 10]; [Doc.54-2 at 51:12-13]; [Doc.54-3 at 40:2-6]; [Doc.54-5 at 6:3-4] & [Doc.54-6 at 5:10-13]

[10] [Doc.33 at ¶15]; [Doc.54-1 at 10]; [Doc.54-2 at 57:21-58:2]; [Doc.54-3 at 35:12-14] & [Doc.54-5 at 7:22-23]

[11] [Doc.54-1 at 10]; [Doc.54-2 at 84:25-85:5]; [Doc.54-3 at 37:24-38:3]; [Doc.54-4 at 12:15-23]; [Doc.54-5 at 6:23-7:1] & [Doc.54-6 at 5:18-19]

[12] [Doc.54-2 at 84:6-16, 113:9-16 and 114:7-10]

11. Plaintiff returned to the truck after Defendant Wagner ordered her to.[13]

12. Up to this point, Plaintiff had not threatened or provoked Defendant Wagner in any way; nor had she made any aggressive movements toward Defendant Wagner that would have placed him in fear.[14]

13. Defendant Wagner was not in fear of Plaintiff nor saw her as a threat.[15]

### C. Wagner Released Plaintiff from the Scene

14. Defendant Wagner returned to the pickup truck to inform Plaintiff that he was impounding the truck.[16]

15. Plaintiff asked if she could use the truck to get home, which Defendant Wagner did not allow.[17]

16. Defendant Wagner ordered Plaintiff to exit the truck and informed her that she was free to leave.[18]

17. Defendant Wagner had no intention of arresting Plaintiff at that time on a "weak" obstruction charge.[19]

18. Defendant Wagner held out Plaintiff's driver's license for her to retrieve.[20]

---

[13] [Doc.54-1 at 10]; [Doc.54-2 at 84:1-4]; [Doc.54-3 at 39:7-9]; [Doc.54-4 at 12:23-13:6]; [Doc.54-5 at 7:1-6] & [Doc.54-6 at 5:19-21]

[14] [Doc.54-2 at 85:6-15]

[15] [Doc.54-3 at 40:12-15 and 81:11-15]

[16] [Doc.33 at ¶¶16-17]; [Doc.54-1 at 10]; [Doc.54-2 at 64:9-12]; [Doc.54-3 at 80:4-7]; [Doc.54-5 at 12:3-6] & [Doc.54-6 at 6:8-11]

[17] [Doc.33 at ¶18]; [Doc.54-1 at 10]; [Doc.54-2 at 63:10-17 and 64:1-5]; [Doc.54-3 at 40:17-41:1]; [Doc.54-4 at 15:12-22]; [Doc.54-5 at 8:15-22] & [Doc.54-6 at 6:11-16]

[18] [Doc.33 at ¶18]; [Doc.54-1 at 10]; [Doc.54-2 at 67:7-14 and 67:18-23]; [Doc.54-3 at 43:20-25 and 80:4-11] & [Doc.54-5 at 9:5-9]

[19] [Doc.54-3 at 44:24-45:5, 54:18-20 and 73:10-18]; [Doc.54-4 at 28:6-17 and 30:3-5] & [Doc.54-5 at 13:1-6 and 31:8-10]

[20] [Doc.33 at ¶18]; [Doc.54-1 at 10]; [Doc.54-2 at 67:12-23]; [Doc.54-3 at 44:25-45:5]; [Doc.54-4 at 30:11-16]; [Doc.54-5 at 9:5-9] & [Doc.54-6 at 12:1-9]

19. Plaintiff exited the truck, slammed the door and grabbed her driver's license from Defendant Wagner with her left hand.[21]

20. Plaintiff believed that the interaction with Defendant Wagner had concluded when she retrieved her driver's license from him.[22]

21. Plaintiff turned away from Defendant Wagner and began to quickly walk away from him because his temper was making her uncomfortable.[23]

### D. Wagner's Use of Force on Plaintiff[24]

22. Defendant Wagner grabbed Plaintiff from behind with both arms and forcefully threw her into the back of the pickup truck.[25]

23. Defendant Wagner threw Plaintiff so hard against the truck the impact caused the truck to move.[26]

24. Defendant Wagner held Plaintiff's hands behind her back, spun her around away from the truck and threw her face first onto the parking lot floor.[27]

---

[21] [Doc.33 at ¶19]; [Doc.54-2 at 64:16-23]; [Doc.54-6 at 6:17, 6:22-25, 12:7-9, 13:9 and 31:15-19]; [Doc.54-7a at 9:53:12 p.m.] & [Doc.54-7b at 9:06:17 to 9:06:21 p.m.]

[22] [Doc.33 at ¶19]; [Doc.54-2 at 67:7-23]; [Doc.54-3 at 44:25-45:5] & [Doc.54-4 at 30:11-16] & [Doc.54-5 at 31:8-10]

[23] [Doc.33 at ¶19]; [Doc.54-1 at 10]; [Doc.54-2 at 128:4-129:8]; [Doc.54-5 at 9:17-18]; [Doc.54-6 at 14:5-7]; [Doc.54-7a at 9:53:15 p.m.] & [Doc.54-7b at 9:06:22 p.m.]

[24] The entire incident in question was caught on video by Defendant Wagner's in-dash COBAN camera and on the Mobil gas station surveillance cameras. Both Plaintiff and Defendant Wagner verified that these cameras captured the event in question accurately, and that they rely upon and defer to the audio and visual depictions as captured by both cameras. [Doc.54-2 at 60:6-19, 111:5-6 and 139:1-4] & [Doc.54-3 at 30:7-12 and 83:18-84:15]

[25] [Doc.33 at ¶20]; [Doc.54-1 at 10-11]; [Doc.54-2 at 72:25-74:1]; [Doc.54-3 at 47:23-48:4 and 48:24-49:1]; [Doc.54-5 at 9:18-20]; [Doc.54-6 at 14:8-14 and 15:5-15]; [Doc.54-7a at 9:53:17 p.m.] & [Doc.54-7b at 9:06:22 to 9:06:23 p.m.]

[26] [Doc.54-2 at 105:4-16]; [Doc.54-3 at 89:24-90:7]; [Doc.54-7a at 9:53:17 p.m.] & [Doc.54-7b at 9:06:23 to 9:06:25 p.m.]

[27] [Doc.33 at ¶20]; [Doc.54-2 at 74:11-18 and 75:3-20]; [Doc.54-3 at 90:8-17]; [Doc.54-6 at 15:25-17:5]; [Doc.54-7a at 9:53:18 to 9:53:23 p.m.] & [Doc.54-7b at 9:06:25 to 9:06:29 p.m.]

25. Defendant Wagner was holding Plaintiff's hands while forcefully taking her to the ground in a manner that prevented her from protecting herself.[28]

26. As a result, Plaintiff fell face first onto the pavement with the left side of her face and jaw hitting the concrete.[29]

27. Defendant Wagner fell on top of Plaintiff.[30]

28. Defendant Wagner proceeded to smash Plaintiff's face into the pavement multiple times while on top of her on the ground.[31]

29. While doing so, Defendant Wagner used his body weight to hold Plaintiff's face against the concrete by applying constant pressure to her head.[32]

30. Defendant Wagner also placed his knee into Plaintiff's lower back, putting all of his weight on her.[33]

31. Plaintiff voluntarily gave Defendant Wagner her right hand when instructed to do so while he continued to push her face into the ground.[34]

---

[28] [Doc.54-2 at 91:1-4 and 91:17-19]

[29] [Doc.33 at ¶20]; [Doc.54-2 at 74:17-20 and 91:19-21]; [Doc.54-3 at 52:10-15, 82:18-23 and 90:15-20]; [Doc.54-6 at 17:10-11] & [Doc.54-7a at 9:53:23 p.m.]

[30] [Doc.54-2 at 91:19-21 and 106:1-15]; [Doc.54-5 at 10:4-7]; [Doc.54-7a at 9:53:23 p.m.] & [Doc.54-7b at 9:06:29 p.m.]

[31] [Doc.54-2 at 75:23-24, 77:4-18, 78:4-20, 92:2-18 and 96:15-17]; [Doc.54-3 at 82:24-83:8]; [Doc.54-5 at 19:11-20:14]; [Doc.54-6 at 18:20-19:15 and 20:3-8] & [Doc.54-7a at 9:53:25, 9:53:29 and 9:53:33 p.m.]

[32] [Doc.54-2 at 119:4-24]

[33] [Doc.54-2 at 77:9-12]; [Doc.54-3 at 51:19-25]; [Doc.54-4 at 19:23-20:3 and 21:3-12]; [Doc.54-6 at 20:3-8]; [Doc.54-7a at 9:53:40 p.m.] & [Doc.54-7b at 9:06:45 p.m.]

[34] [Doc.54-2 at 108:7-15]; [Doc.54-3 at 91:12-18]; [Doc.54-5 at 47:5-7 and 47:20-48:3]; [Doc.54-7a at 9:53:35 p.m.] & [Doc.54-7b at 9:06:41 p.m.]

32. After having control of Plaintiff's hands and still sitting on top of her, Defendant Wagner radioed for backup assistance by claiming that he "was in a fight."[35]

33. Plaintiff calmly responded "you're not in a fight officer."[36]

34. While being placed into handcuffs, Plaintiff asked Defendant Wagner "what are you doing?" Deputy Wagner yelled "stop, you're under arrest." Plaintiff asked "for what?" Deputy Wagner stated "battery on a leo." Plaintiff calmly responded "I didn't do anything to you."[37]

35. Deputy Tiffany Ashcom arrived as backup and Defendant Wagner informed her that "now she's going for battery and resisting."[38]

36. As Plaintiff was being rolled over and searched, she claimed that "you slammed me to the ground, like I didn't even touch you." Defendant Wagner responded "you pushed me." Plaintiff stated "sir, I didn't even touch you." Defendant Wagner responded "ok, we're not gonna have that. We're not gonna play that game." Plaintiff stated "the Mobil mart can even play the video." Defendant Wagner responded that "I have video in my car."[39]

37. Defendant Wagner got Plaintiff to her feet and escorted her to Deputy Ashcom's patrol vehicle.[40]

---

[35] [Doc.54-2 at 76:2-3, 95:8-19]; [Doc.54-3 at 91:22-92:8] & [Doc.54-7a at 9:53:38 p.m.]
[36] [Doc.54-2 at 77:13-18 and 95:24-96:8] & [Doc.54-7a at 9:53:40 p.m.]
[37] [Doc.54-2 at 96:14-97:23] & [Doc.54-7a at 9:53:50 to 9:53:55 p.m.]
[38] [Doc.54-7a at 9:54:14 p.m.]
[39] [Doc.54-2 at 99:6-13] & [Doc.54-7a at 9:54:30 to 9:54:40 p.m.]
[40] [Doc.54-7a at 9:54:47 p.m.] & [Doc.54-7b at 9:07:53 p.m.]

### E. *No Justification Existed for This Use of Force*

38. Defendant Wagner used the force against Plaintiff without any provocation; thereby making the force gratuitous and excessive.[41]

39. As she was retrieving her driver's license from Defendant Wagner, Plaintiff never made any contact with him nor spoke any words to him.[42]

40. As she was retrieving her driver's license from Defendant Wagner, Plaintiff never threatened him or provoked him.[43]

41. Prior to Defendant Wagner throwing her face first onto the pavement, Plaintiff had not offered him any resistance.[44]

42. Plaintiff would have complied if given an opportunity to get to the ground.[45]

43. After being thrown face first onto the pavement, Plaintiff offered no resistance to Defendant Wagner who was on top of her.[46]

44. Plaintiff did nothing to warrant having her face pushed into the concrete multiple times once on the floor with Defendant Wagner on top of her.[47]

45. When ordered to do so, Plaintiff voluntarily gave Defendant Wagner her right hand for him to place into handcuffs.[48]

---

[41] [Doc.33 at ¶¶21-22]; [Doc.54-2 at 81:18-22] & [Doc.54-6 at 19:16-20:2]
[42] [Doc.54-2 at 69:15-25, 70:17-21, and 88:2-10]; [Doc.54-6 at 13:16-14:4 and 36:16-37:3]; [Doc.54-7a at 9:53:12 to 9:53:16 p.m.] & [Doc.54-7b at 9:06:21 to 9:06:22 p.m.]
[43] [Doc.54-2 at 61:14-20, 65:18-25, 66:5-12, 70:5-16 and 105:17-23]
[44] [Doc.54-2 at 77:22-78:3 and 106:10-107:1]; [Doc.54-7a at 9:53:17 to 9:53:23 p.m.] & [Doc.54-7b at 9:06:22 to 9:06:29 p.m.]
[45] [Doc.54-2 at 90:6-12 and 135:8-21]
[46] [Doc.54-2 at 78:4-7, 96:12-13 and 98:18-24]; [Doc.54-6 at 18:2-6 and 39:22-40:1]; [Doc.54-7a at 9:53:24 to 9:54:18 p.m.] & [Doc.54-7b at 9:06:30 to 9:07:23 p.m.]
[47] [Doc.54-2 at 119:5-120:6] & [Doc.54-6 at 18:22-20:2]
[48] [Doc.54-2 at 107:10-108:4, 109:8-24 and 137:19-24]; [Doc.54-3 at 83:10-17 and 91:12-18]; [Doc.54-7a at 9:53:35 p.m.] & [Doc.54-7b at 9:06:41 p.m.]

46. After being placed into handcuffs, Defendant Wagner continued to sit on top of Plaintiff with his full body weight.[49]

47. Defendant Wagner was angry, very irritated and aggressive during his encounter with Plaintiff.[50]

### F. Wagner's Arrest of Plaintiff

48. Defendant Wagner arrested Plaintiff for "battery on a law enforcement officer" and "resisting an officer with violence", both felonies.[51]

49. Defendant Wagner charged Plaintiff with both crimes based solely on a shove to his chest that he believes occurred while Plaintiff was retrieving her driver's license from him.[52]

50. Plaintiff never shoved Defendant Wagner on that evening and, therefore, never committed either of those felony offenses.[53]

51. The alleged shove from Plaintiff that led to this arrest is not depicted in the videos.[54]

52. Likewise, Defendant Wagner agrees that the shove never happened when "watching the video."[55]

---

[49] [Doc.54-2 at 110:1-6]; [Doc.54-7a at 9:53:56 to 9:54:18 p.m.] & [Doc.54-7b at 9:06:45 to 09:07:23 p.m.]
[50] [Doc.54-2 at 51:14-18, 53:23-54:6, 62:2-13, 64:13-15, 96:5-8 and 100:11-15]; [Doc.54-5 at 34:5-9, 35:3-14, 39:17-21, 41:8-14 and 55:8] & [Doc.54-6 at 7:9-13 and 9:15-10:2]
[51] [Doc.33 at ¶23]; [Doc.54-1 at pg.5] & [Doc.54-3 at 48:5-12 and 72:6-11]
[52] [Doc.54-3 at 71:19-25, 72:12-16, 72:24-73:3 and 79:6-19]
[53] [Doc.33 at ¶22] & [Doc.54-2 at 97:24-98:8 and 124:19-22]
[54] [Doc.54-2 at 124:23-125:1 and 139:22-140:13] & [Doc.54-4 at 31:19-21, 37:20-38:2, 38:14-15, 54:1-2 and 69:11-15]
[55] [Doc.54-4 at 51:7-52:11 and 63:4-15]

53. As a result, other than his belief that it happened, Defendant Wagner has no proof that Plaintiff actually shoved him.[56]

### G. Wagner Exaggerated His Reenactment of the Event to Responding Deputies

54. Defendant Wagner reenacted the "shove" to Deputy Ashcom after placing Plaintiff into Deputy Ashcom's patrol vehicle. However, this exaggerated reenactment (that Plaintiff pushed off on his gun belt and then shoved him with both hands) was inaccurate and not truthful.[57]

55. Defendant Wagner later reenacted the "shove" to Deputies Hard and Logaglio. However, this exaggerated reenactment (that Plaintiff shoved him with both hands) was inaccurate and not truthful. He blames these exaggerations on him either being aggravated, upset and/or venting; even though he was smiling throughout the reenactment.[58]

### H. Charges Dropped as to Plaintiff

56. The "resisting an officer with violence" felony charge was administratively closed on April 12, 2016.[59]

57. The "battery on a law enforcement officer" felony charge was nolle prossed on August 12, 2016.[60]

---

[56] [Doc.54-3 at 82:7-15]
[57] [Doc.54-3 at 53:3-16, 76:4-14, 96:11-23 and 97:14-98:14]; [Doc.54-4 at 55:1-7, 59:2-25 and 66:24-67:12]; [Doc.54-5 at 20:15-21:13 and 54:23-55:12] & [Doc.54-7b at 9:08:54 to 09:09:01 p.m.]
[58] [Doc.54-3 at 53:3-16, 76:4-14 and 98:15-99:7]; [Doc.54-4 at 55:1-17, 56:21-57:15, 58:6-23, 66:24-67:12 and 71:21-25]; [Doc.54-5 at 21:14-22:12, 41:2-14, 42:22-43:7 and 54:23-55:12] & [Doc.54-7b at 9:16:05 to 9:16:13 p.m. and 9:19:55 to 9:20:06 p.m.]
[59] [Doc.33 at ¶24] & [Doc.54-2 at 125:2-4]
[60] [Doc.33 at ¶25] & [Doc.54-2 at 125:2-4]

### *I. Wagner Falsified Plaintiff's Arrest Report*

58. Defendant Wagner falsified and therefore lied in Plaintiff's arrest report.[61]

59. Specifically, Defendant Wagner included a false statement that "and with her right hand, shoved me", which never occurred and is not seen in the video.[62]

60. In addition, Defendant Wagner included a false statement that "[w]hile on the ground, Paige resisted orders to put her hands behind her back"; the opposite of which is undoubtedly shown in the video.[63]

61. Lastly, Defendant Wagner included a false statement in his supplement written over a month after the evening in question that "the video shows the entire incident … you can see the female … push me with her hand", which never occurred and is not seen in the video.[64]

### *J. Wagner Terminated and Relinquished his Law Enforcement Certification*

62. On November 17, 2016, at the conclusion of the Administrative Review Board Hearing for Administrative Investigation 16-015, Defendant PCSO substantiated findings that Defendant Wagner violated Rule and Regulation 5.15 "Custody of Arrestees/Prisoners" as well as Rule and Regulation 5.6 "Truthfulness".[65]

---

[61] [Doc.54-2 at 125:17-24]
[62] [Doc.54-1 at pg.10]; [Doc.54-2 at 129:9-16, 131:2-5 and 131:12-132-6]; [Doc.54-3 at 55:13-56:9]; [Doc.54-4 at 67:6-12] & [Doc.54-6 at 39:7-16]
[63] [Doc.54-1 at pg.11]; [Doc.54-2 at 136:17-137:8]; [Doc.54-3 at 83:11-17 and 90:21-91:18]; [Doc.54-5 at 45:21-46:4, 47:4-7 and 47:22-48:3] & [Doc.54-6 at 39:20-40:1]
[64] [Doc.54-1 at pg.15]; [Doc.54-2 at 139:1-140:13]; [Doc.54-3 at 74:19-76:3, 83:21-84:15, 87:8-21, 88:1-22, 89:4-16 and 100:18-101:6]; [Doc.54-4 at 24:24-26:22, 60:1-61:11 and 67:18-68:3] & [Doc.54-5 at 52:18-25 and 53:7-14]
[65] [Doc.54-4 at 74:21-75:7];

63. These violations resulted in Defendant Wagner's involuntary termination from employment with Defendant PCSO on the following day, which Defendant Wagner did not appeal.[66]

64. On November 30, 2016, Defendant PCSO filed an Internal Investigation Report, Affidavit of Separation and Affidavit of Separation Supplement with the Florida Department of Law Enforcement ("FDLE") due to these sustained violations to inform FDLE of Defendant Wagner's termination from law enforcement.[67]

65. As a result, on May 15, 2017, FDLE filed an Administrative Complaint seeking an appropriate penalty from the Criminal Justice Standards and Training Commission ("CJSTC") against Defendant Wagner for his "use of excessive force or unnecessary force on Paige Taylor, victim."[68]

66. On August 29, 2017, the CJSTC issued a Final Order wherein Defendant Wagner voluntarily relinquished his criminal justice certificates.[69]

67. Defendant Wagner believes that he was treated fairly during the entire disciplinary process against him for the rule violations.[70]

## <u>MEMORANDUM OF LAW IN SUPPORT</u>

Defendant, pursuant to Local Rule 3.01(a), files this Memorandum of Law in support of its Dispositive Motion for Summary Judgment. Defendant believes to be

---

[66] [Doc.54-3 at 57:16-21 and 101:7-20] & [Doc.54-8]
[67] [Doc.54-9]
[68] [Doc.54-10]
[69] [Doc.54-3 at 21:10-21 and 101:21-102:9] & [Doc.54-11]
[70] [Doc.54-3 at 22:1-6]

entitled to a judgment in its favor as a matter of law as to Plaintiff's Amended Complaint in its entirety. Defendant respectfully requests that this Honorable Court grant summary judgment in its favor pursuant to FED. R. CIV. P. 56 and because Defendant is entitled to the protections and limitations provided by sovereign immunity as to all of Plaintiff's state law claims.

### SOVEREIGN IMMUNITY

Relying upon FED. R. CIV. P. 8(d), Plaintiff pled her state claims in the alternative at the outset of this matter. *Bing v. Landreville*, Case No. 3:16-cv-1140, 2018 WL 1121610, at *9 (M.D. Fla. at March 1, 2018). "Ultimately, as the facts are further developed by the parties, only one of these claims can potentially prevail." *Id.*

"Florida's sovereign immunity statute renders the liability of the officers and their respective employers mutually exclusive." Therefore, with respect to Plaintiff's alternative state counts for battery and false arrest - "either the officer, or the employer, or neither is liable to the Plaintiff, but both cannot be liable to Plaintiff." *Perez v. School Bd. of Miami-Dade,* 917 F.Supp.2d 1261, 1268 (S.D. Fla. 2013). Consequently, Florida's sovereign immunity law precludes Plaintiff from recovering concurrently from both Defendant PCSO (former employer) and Defendant Wagner (former employee) for battery and false arrest.

Specifically, the state law battery (Count IV) and state law false arrest (Count VI) claims alleged against Defendant in Plaintiff's Amended Complaint are barred by the Doctrine of Sovereign Immunity in accordance with §768.28(9)(a), Fla. Stat., which states in pertinent part:

> [t]he state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of her or his employment *or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property*. [emphasis added]

"The question of whether an act was committed with malicious purpose, bad faith, or with wanton and willful disregard is not a question that must be submitted to a jury, but rather, can be decided by the Court depending on the facts." *Blue v. Miami-Dade County*, Case No. 10-23599-CIV, 2011 WL 2447699, at *2 (S.D. Fla. June 15, 2011) (citing *Prieto v. Malgor*, 361 F.3d 1313, 1320 (11th Cir. 2004) (determining that the Florida Supreme Court "explicitly disavowed the proposition that the question of bad faith must always be submitted to the fact finder.")).

In this matter, sovereign immunity under §768.28(9)(a), Fla. Stat., is automatically implicated because Plaintiff specifically describes Defendant Wagner's intentional actions as committed in bad faith, maliciously and recklessly. *Bussey-Morice v. Kennedy*, 657 F. App'x. 909, 915 (11th Cir. 2016). As such, Plaintiff's own factual assertions leave this Honorable Court with only one option - granting Defendant sovereign immunity and barring Plaintiff's state law causes of action for battery (Count VI) and false arrest (Count IV).

## I.    *PCSO is Immune from Plaintiff's Battery Claim (Count VI)*

As previously shown, Plaintiff definitively claims that she never threatened, provoked, touched, struck, kicked, resisted or shoved Defendant Wagner on the evening in question. Further, Defendant Wagner agrees and admits that Plaintiff freely gave him her right hand when ordered to do so and that he used force on her

in reaction to the alleged "shove". However, Defendant Wagner has no proof that Plaintiff actually shoved him [Doc.54-3 at 82:7-15].

Nonetheless, Defendant Wagner forcefully threw Plaintiff into the back of the pickup truck[71], held her hands behind her back while taking her down face first onto the pavement, bounced her head and face into the concrete, fell on top of her, continued to smash her face into the concrete several times and put all of his weight on her with his knee in her back while she laid face down on the floor compliant and under his total control [see ¶¶22-37 herein]; all without any justification [see ¶¶38-47 herein].

Defendant submits that even if Plaintiff "shoved" him, the level and amount of force used in reaction was disproportionate and unnecessary. Further and more importantly, Defendant submits that this disproportionate and unnecessary force can only equate with the kind of malicious, bad faith or willful and wanton conduct that requires granting sovereign immunity under §768.28(9)(a), Fla. Stat. *Printemps v. Miami Dade Co.*, Case No.1:17-cv-20268, 2017 WL 2555631, at *3 (S.D. Fla. June 9, 2017) (citing *Terry v. Rodriguez, et al.*, Case No. 09-cv-23726, D.E. 16 at *4-5 (S.D. Fla. June 4, 2010)).

In like situations, sovereign immunity has been granted to the employing agency when its officer used force on a compliant and non-threatening person. *See Gaviria v.*

---

[71] Plaintiff described Defendant Wagner's actions of grabbing her from behind while she was walking away and throwing her into the truck as similar to what happens in an aggressive sport such as football or hockey [Doc.54-2 at 72:24-73:1 and 73:16-74:1].

*Guerra*, Case No. 17-23490-civ, 2018 WL 1876124, at *11 (S.D. Fla. Apr. 19, 2018) (battery claim against agency dismissed where officers, without provocation, deployed Taser and punched an unresisting plaintiff); *Thomson v. Officer Davenport*, Case No. 09-21708-civ, 2010 WL 11601554, at *5 n.9 (S.D. Fla. June 16, 2010) (county was immune because the officer shot plaintiff, whom posed no threat or flight risk, three times in the chest with a Taser); *Casado v. Miami-Dade Co.*, 340 F.Supp.3d 1320, 1330 (S.D. Fla. 2018) (county was immune from a battery claim alleging that the officer repeatedly punched the plaintiff in the face and slammed him on the hood of his car); *Alicea v. Miami-Dade Co.*, Case No. 13-cv-21549, DE# 95 (S.D. Fla. Oct. 25, 2014) (county was immune from officer's actions of violently pummeling plaintiff in the head, face and torso); *Mena v. Miami-Dade Co.*, No. 14-20030-CIV, 2014 WL 3667806, *2 (S.D. Fla. July 22, 2014) (section 768.28(9)(a), Fla. Stat., barred a battery claim against the county where the officers pulled plaintiffs from their car, threw them down, beat them and handcuffed them).

Similar conduct has recently been found to be malicious by the Eleventh Circuit. "Such a use of force – without any conceivable justification – manifests 'a deliberate intention to do wrong…" *Quinette v. Reed*, 805 F. App'x. 696, 707 (11th Cir. 2020) (denying immunity to a corrections officer who entered a compliant inmate's cell and shoved him to the ground with both hands); *McCroden v. Bressett*, 668 F. App'x. 867, 868 (11th Cir. 2016) (arm-bar takedown of a non-aggressive, compliant plaintiff was objectively unreasonable and may have been done in bad faith, with malicious purpose, or in a wanton and willful manner under Fla. Stat. §768.28(9)(a)).

Plaintiff asserts that the force used by Defendant Wagner was excessive, gratuitous and objectively unreasonable [Doc.33 at ¶¶22, 66]. Both Plaintiff and Defendant Wagner agree that he was angry and irritated during this encounter with her [see ¶47 herein]. As to all excessive force used against her, Plaintiff claims that Defendant acted intentionally and he thought out all actions taken [Doc.54-2 at 110:10-17]. As told by Defendant Wagner, "I put hands on her … It was my intention to handcuff her" [Doc.54-4 at 41:4-6] and he "wanted to keep control of her hand by applying pressure with my knee and my entire body weight" [Doc.54-4 at 21:7-12]. Defendant Wagner achieved this intention regardless of the amount of force used.

Plaintiff asserts that Defendant Wagner acted with bad faith and malice when he threw her face first onto the pavement while holding her arms behind her back [Doc.54-2 at 105:4-107:9]. Additionally, Plaintiff asserts that Defendant Wagner threw her down face first intentionally and was very reckless because he should have known that doing so was likely to cause her injury [Doc.54-2 at 76:4-17, 93:9-18, 106:1-107:5 and 136:6-16].[72] Reckless conduct "would at least constitute willful and wanton conduct under section 768.28(9); therefore, the doctrine of sovereign immunity would bar the instant action." *Williams v. City of Minneola*, 619 So.2d 983, 987 (Fla. 5th DCA 1993).

---

[72] Plaintiff claims that this excessive and gratuitous force caused her to suffer numerous, serious and permanent injuries [Doc.33 at ¶¶26, 28].

Defendant Wagner knew that it was possible for Plaintiff to land face first on the concrete in the manner that he took her down [Doc.54-5 at 17:17-21]. Further, Defendant Wagner knew that it was possible for Plaintiff's face, head and/or neck to be injured when throwing her down face first onto the concrete while holding her hands behind her back [Doc.54-3 at 52:10-53:1]. "A state employee acts with willful and wanton disregard of human rights and safety where he 'knew, or reasonably should have known in light of the surrounding circumstances, that his conduct would naturally or probably result in injury and, with such knowledge, disregarded the foreseeable injurious consequences.'" *Lousisius v. Varnes*, Case No. 6:14-cv-931, 2015 WL 12806539, at *3 (M.D. Fla. Mar. 18, 2015) (quoting *Lemay v. Kondrk*, 860 So.2d 1022, 1025 (Fla. 5th DCA 2003)).

Plaintiff claims that Defendant Wagner shoved her face into the pavement repeatedly cruelly, unfairly, intentionally, maliciously, in bad faith and with ill will [Doc.54-2 at 93:19-94:11 and 108:1-22]. Plaintiff also asserts that Defendant Wagner continually put all of his weight on her in bad faith [Doc.54-2 at 110:1-9].

When confronted with a remarkably similar fact pattern, the Middle District Court of Florida previously granted sovereign immunity. *See Asparilla v. Trinidad*, 2009 WL 2151156, at *4 (M.D. Fla. July 14, 2009) (city was immune from officer who intentionally pushed the plaintiff causing her to fall down a flight of stairs while she was leaving a nightclub as ordered, which was caught on surveillance video, and then later falsified his arrest report for battery on a law enforcement officer and resisting without violence).

Clearly in this matter, all evidence and testimony points to the fact that Defendant Wagner intentionally used gratuitous and excessive force on Plaintiff and committed such acts with malice, bad faith or in a manner exhibiting wanton and willful disregard for her rights and safety when she free to leave and was already walking away. Moreover, the Mobil video unequivocally shows that Plaintiff never pushed Defendant Wagner or refused his order to give him her right hand.

As such, Defendant PCSO is entitled to sovereign immunity in accordance with §768.28(9)(a), Fla. Stat., as to Plaintiff's state law claim for Battery asserted in Count VI of her Amended Complaint as a matter of law.

## II.    PCSO is Immune from Plaintiff's False Arrest Claim (Count IV)

As previously shown, Plaintiff asserts that Defendant Wagner falsified his arrest report, which led to her felony arrest for "Battery on a Law Enforcement Officer" and "Resisting an Officer With Violence"; both of which were dismissed by the State Attorney's Office. Specifically, the false statements included by Defendant Wagner in the arrest report are: (1) "and with her right hand, shoved me" [Doc.54-1 at pg.10]; (2) "[w]hile on the ground, Paige resisted orders to put her hands behind her back" [Doc.54-1 at pg.10]; and (3) "the video shows the entire incident … you can see the female … push me with her hand" [Doc.54-1 at pg.15].

However, the record evidence indisputably shows that Plaintiff never pushed Defendant Wagner and that she voluntarily gave him her right arm when ordered to do so [see ¶¶59-61 herein]. Therefore, Plaintiff rightfully asserts that Defendant Wagner falsified his arrest report and supplement [Doc.54-2 at 125:17-24]. Thus,

Defendant Wagner either knew or should have known that this arrest was without legal justification [Doc.33 at ¶52].

As to Defendant Wagner's first false statement in the arrest report that Plaintiff shoved him, Plaintiff claims that he was untruthful and falsified his report [Doc.54-6 at 39:4-16]. Plaintiff adamantly denies ever shoving Defendant Wagner with her right hand, claims that there is no truth to that statement in the arrest report and does not know why he would lie [Doc.54-2 at 97:24-98:8, 129:9-16 and 131:2-5]. Defendant admits that this arrest report was written several hours after the incident when his adrenaline had subsided [Doc.54-3 at 55:13-24]. Nonetheless, Defendant Wagner still wrote that Plaintiff shoved him in the arrest report, but now "acknowledges that those are not the actual facts of the case that night" [Doc.54-3 at 55:25-56:9]. Defendant Wagner further admitted that he provided a similar statement days later to the State Attorney's Office [Doc.54-3 at 60:24-61:15].

As to Defendant Wagner's second false statement in the arrest report that Plaintiff resisted orders to put her hands behind her back, Plaintiff states that she complied with his orders when she voluntarily put her right hand behind her back and, therefore, offered no resistance [Doc.54-2 at 107:10-108:4]. Plaintiff further claims that her compliance and lack of resistance is accurately depicted on the Mobil video [Doc.54-2 at 136:17-137:24]. Likewise, Defendant Wagner agrees that the Mobil video shows that Plaintiff placed her hand behind her back "freely on her own accord" [Doc.54-5 at 47:5-7 and 47:22-48:3].

As to Defendant Wagner's third false statement in the arrest report supplement that the video clearly shows that Plaintiff shoved him, Plaintiff agrees that the video shows the entire incident [Doc.54-2 at 139:1-4]. However, Plaintiff adamantly denies that the video shows her push Defendant Wagner and that his assertion to the contrary in the supplement is a lie [Doc.54-2 at 139:22-140:10]. Plaintiff properly claims that there is no way that statement could possibly be true from watching that video [Doc.54-2 at 140:11-13].

As to this third false statement, Defendant Wagner admittedly watched the Mobil video a month and two days after the arrest and prior to authoring his supplement [Doc.54-3 at 74:19-75:12 and 88:1-22]. However, Defendant Wagner now agrees that the Mobil video referenced in his supplement does not show Plaintiff shoving him [Doc.54-3 at 87:8-21 and 89:9-16] & [Doc.54-4 at 24:24-26:22, 31:21, 37:20-38:2, 38:14-15, 53:24-54:2, 63:11-15 and 69:11-15]. Hence, Defendant Wagner admits that his supplement is "***not a true and accurate statement***" [Doc.54-5 at 52:18-25 and 53:7-14], which he concurs is problematic because his report should accurately and correctly reflect what the video shows [Doc.54-3 at 100:25-101:10].

In like situations, sovereign immunity has been granted to the employing agency when the officer has (i) created facts and manufactured evidence that was included in the offense report and (ii) gave false information to the State Attorney's Office. *Printemps*, 2017 WL 2555631 at *3. Accordingly, arresting subjects without probable cause by fabricating evidence, making false statements and/or material omissions constitute conduct that can only be described as "committed in bad faith or with

malicious purpose," for which Defendant is sovereignly immune and shall not be held liable. *Casado*, 340 F.Supp.3d at 1330 (citing *Alicea*, Case No. 13-21549, DE# 95 (county is immune from officer's "false statements and material omissions" regarding plaintiff's arrest)).

Simply put, granting Defendant sovereign immunity is the only option available because "[t]hese allegations can only equate with the kind of intentional, malicious misconduct by a state employee that does not give rise to municipal liability under Florida's waiver of sovereign immunity statute." *Printemps*, 2017 WL 2555631 at *3 (citing *Terry*, Case No. 09-cv-23726, D.E. 16 at *4-5). The *Printemps* court found that the false arrest at issue was explicitly caused by the arresting officer's malicious and bad faith conduct and, therefore, the claim against the County for the very same misconduct need not be submitted to a jury and could instead be dismissed by the Court based on the facts. *Id.* (citing *Blue*, 2011 WL 2447699 at *2).

Clearly in this matter, all record evidence and testimony undeniably show that Defendant Wagner arrested Plaintiff for two felonies based exclusively on three false statements included in his arrest report and supplement. Moreover, the Mobil video, which Defendant Wagner relied upon over a month later for his supplement, shows that Plaintiff never shoved him or resisted his orders to give him her right hand.

As such, Defendant PCSO is entitled to sovereign immunity in accordance with §768.28(9)(a), Fla. Stat., as to Plaintiff's state law claim for False Arrest asserted in Count IV of her Amended Complaint as a matter of law.

## <u>CONCLUSION</u>

In sum, Defendant, BOB GUALTIERI, in his official capacity as Sheriff of Pinellas County, definitively submits that it is entitled to a favorable judgment as to Counts IV and VI of Plaintiff's Amended Complaint as a matter of law because the state law claims for battery and false arrest in those counts are barred by the Doctrine of Sovereign Immunity in accordance with §768.28(9)(a), Fla. Stat.

***WHEREFORE***, Defendant respectfully requests that this Honorable Court grant Defendant's Dispositive Motion for Summary Judgment; provide Defendant with its rightful entitlement to the protections and limitation provided through sovereign immunity; enter a final judgment in favor of Defendant as to Counts IV and VI of Plaintiff's Amended Complaint; and award Defendant the expenses associated with the filing of this Dispositive Motion for Summary Judgment.

Respectfully submitted on this the 7th day of May, 2021,

*/s/ Jason G. Gordillo*
Jason G. Gordillo, Esquire
Attorney for Sheriff Bob Gualtieri
Florida Bar No.:  0399663
Pinellas County Sheriff's Office
10750 Ulmerton Road
Largo, Florida 33778
Telephone:  727.582.6274
Facsimile:   727.582.6459
jgordillo@pcsonet.com
rreuss@pcsonet.com

## <u>CERTIFICATE OF SERVICE</u>

*I HEREBY CERTIFY* that I electronically filed the foregoing with the Clerk of

Court using the CM/ECF system, which will send a Notice of Electronic Filing to all

counsel of record on this the 7th day of May, 2021.


<u>      /s/ Jason G. Gordillo          </u>
Jason G. Gordillo, Esquire