## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

PAIGE LAINE KHYEL TAYLOR,

      Plaintiff,

v.                               Case No: 8:20-cv-687-CEH-SPF

WAYNE WAGNER and BOB
GUALTIERI,

      Defendants.

_____/

## O R D E R

This matter comes before the Court upon Defendant Sheriff Bob Gualtieri's Dispositive Motion for Summary Judgment and Incorporated Memorandum of Law [Doc. 55] and supporting exhibits [Doc. 54], Plaintiff's Response in Opposition [Doc. 62], the Reply [Doc. 66], and the Stipulation of Agreed Upon Material Facts [Doc. 61]. In the motion, Sheriff Gualtieri argues that the claims seeking to hold him vicariously liable for the acts of his former employee Defendant Wayne Wagner—false arrest and battery—are barred by Florida's sovereign immunity. The Court, having considered the motion and being fully advised in the premises, will grant-in-part Sheriff Bob Gualtieri's Dispositive Motion for Summary Judgment.

## I.   BACKGROUND

*Undisputed Material Facts*[1]

---

[1] The Court has determined the facts, which are undisputed unless otherwise noted, based on the parties' submissions, including the Stipulation of Agreed Upon Material Facts [Doc. 61],

The incident giving rise to this action occurred on March 25, 2016.  [Doc. 61 ¶ 1]. It is captured both on dashcam and store surveillance videos. [Doc. 54-7a at 11:25-13:00; Doc. 54-7b at 21:6:15-21:6:25].[2] Around 9:30 that night, Gage Moore was stopped by Pinellas County Sheriff's Deputy Wayne Wagner while driving a 2005 Dodge Ram pickup truck on Gandy Boulevard North and 4th Street North in St. Petersburg, Florida. [Doc. 61 ¶¶ 1, 2]. Wagner was driving an unmarked Dodge Charger, but he was wearing the agency uniform. *Id.* ¶ 6. He initiated the stop because the truck's tag was assigned to another vehicle and because Moore's driver's license was habitually suspended. *Id.* ¶ 3. Plaintiff, Paige Laine Khyel Taylor, was a passenger in the pickup truck laying down in the front seat. *Id.* ¶ 2.

As the vehicle pulled into a Mobil gas station parking lot, Wagner saw Moore and Plaintiff switch seats. *Id.* ¶ 4. Moore was arrested for being a habitual felony traffic offender. *Id.* ¶ 7. While placing Moore into the back of the patrol vehicle, Plaintiff got out of the pickup truck and began to approach Wagner to ask him why Moore was being arrested. *Id.* ¶ 8. She remained at least a car length away from Wagner and returned to the truck after Wagner ordered her to. *Id.* ¶¶ 9, 10. Up to this point, Plaintiff had not threatened or provoked Wagner in any way; nor had she made any aggressive

---

testimony from Plaintiff Paige Laine Khyel Taylor and Defendant Wayne Wagner, as well as the DVD provided by Sheriff Gualtieri.
[2] Doc. 54-7a is the video of the incident captured on Wagner's in-dash COBAN camera and Doc. 54-7b is the video of the incident captured on the Mobil convenience store's surveillance camera.

2

movements toward Wagner that would have placed him in fear, and he did not see her as a threat. [Doc.54-2 at 85:6-15; Doc.54-3 at 40:12-15 and 81:11-15 ].[3]

When Wagner returned to the pickup truck, he asked Plaintiff if she had anyone who could pick her up and noted "we have to find you a ride home" because he was impounding the truck. [Doc. 61 ¶ 11; Doc. 54-7a at 11:00-11:20]. He also explained that because the truck did not have a tag or insurance, he could not let her drive it and told her that he "could call her a cab or do a bunch of stuff for [her]." [Doc. 54-7a at 11:25-11:45]. Officer Wagner ordered Plaintiff to exit the truck and informed her that she was free to leave—he had no intention of arresting her. [Doc. 61 ¶¶ 12, 13, 14]. Wagner held out Plaintiff's driver's license for her to retrieve, having obtained it during the stop. *Id.* ¶¶ 5, 15. She exited the truck, slammed the door, and grabbed her driver's license with her left hand. *Id.* ¶ 16; Doc. 54-7b at 21:6:15-21:6:25. She then turned away from Wagner and began to quickly walk away from him, believing that the interaction had concluded when she retrieved her driver's license. [Doc. 61 ¶¶ 17, 18; Doc. 54-7a at 11:25-11:45; Doc. 54-7b at 21:6:15-21:6:25]. Wagner instantaneously grabbed her in a bear-like hug from behind, slammed her into the truck, spun her around, and threw her face first onto the ground. [Doc 54-7a at 12:00-13:00; Doc. 54-7b at 21:6:15-21:6:25; Doc.54-2 at 105:4-16, 74:11-18, and 75:3-20; Doc.54-3 at 89:24-

---

[3] The exhibit at Doc. 54-2 is the deposition of Plaintiff Paige Laine Khyel Taylor and the exhibit at Doc. 54-3 is the deposition of Defendant Wayne Wagner.

90:7, 47:23-48:4, and 48:24-49:1; Doc.54-5[4] at 9:17-20; Doc. 54-6[5] at 14:8-14, 15:5-15, and 15:25-17:5]. Wagner threw Plaintiff so hard against the truck the impact caused the truck to move. [Doc.54-2 at 105:4-16; Doc.54-3 at 89:24-90:7].

When Plaintiff fell onto the pavement, the left side of her face and jaw hit the concrete and Wagner fell on top of her. [Doc.54-7a at 12:00-13:00; Doc.54-2 at 74:11-20 and 91:19-21; Doc.54-3 at 52:10-15, 82:18-23, and 90:15-20; Doc.54-6 at 17:10-11]. Wagner proceeded to smash Plaintiff's face into the pavement multiple times while on top of her. [Doc.54-7a at 12:00-13:00; Doc.54-2 at 75:23-24, 77:4-18, 78:4-20, 92:2-18, and 96:15-17; Doc.54-3 at 82:24-83:8; Doc.54-5 at 19:11-20:14; Doc.54-6 at 18:20-19:15 and 20:3-8].  While doing so, he used his body weight to hold Plaintiff's face against the concrete by applying constant pressure to her head. [Doc.54-2 at 119:4-24]. He also placed his knee into Plaintiff's lower back, putting all his weight on her. [Doc.54-7a at 12:00-13:00; Doc.54-2 at 77:9-12; Doc.54-3 at 51:19-25; Doc.54-4 at 19:23-20:3 and 21:3-12; Doc.54-6 at 20:3-8]. Plaintiff voluntarily gave Wagner her right hand when instructed to do so, while he continued to push her face into the ground. [Doc.54-7a at 12:00-13:00; Doc.54-2 at 108:7-15; Doc.54-3 at 91:12-18; Doc.54-5 at 47:5-7 and 47:20-48:3]. During the incident, Wagner also requested backup, noting that he was in a fight, to which Plaintiff responded, "You're not in a

---

[4] Doc. 54-5 is Wayne Wagner's sworn statement taken by Sergeant Tammy Richardson and Corporal Mark Kolenda, of the Pinellas County Sheriff's Office Professional Standards Bureau.
[5] The exhibit at Doc. 54-6 is Plaintiff's sworn statement taken by Sergeant Tammy Richardson of the Pinellas County Sheriff's Office Professional Standards Bureau.

fight officer," and asked why she was under arrest. [Doc. 54-7a at 12:00-13:00; Doc. 54-7b at 21:6:15-21:6:25].

Plaintiff was arrested by Wagner for "battery on a law enforcement officer" and "resisting an officer with violence;" both felonies. [Doc. 61 ¶ 20; Doc.54-7a at 12:00-13:00]. In the arrest report, Wagner presented the following account of the incident:

> I approached Paige at the vehicle. . . . I asked her to step out of the vehicle so I could impound it. Paige exited the vehicle, immediately slammed the door and aggressively approached me. Paige then ripped her driver's license out of my hands, and with her right hand, shoved me. . . . At the time Paige came in contact with me, I was in a Class A uniform, and acting in a Law Enforcement capacity. Paige committed the act of battery on a Law Enforcement Officer.
>
> I immediately grabbed her as she attempted to walk away from me. I pushed Paige up against the side of the pickup truck in an attempt to restrain her. Paige attempted to pull away from my grab and continued to try and walk away from me. Paige then spun around back towards the front of the vehicle. I ordered Paige to the front of the vehicle multiple times as she continued to try and forcibly pull away from my grip. Paige refused to comply with multiple lawful orders to get to the ground. I attempted to utilize an arm bar take down to redirect her to the ground and secure her in handcuffs. Paige continued to spin around in an effort to get out of my grip. I was able to redirect Paige to the ground and request backup. While on the ground, Paige resisted orders to put her hands behind her back. Eventually I was able to pull her hands behind her back and she then became compliant. . . . Paige was charged with battery on a Law Enforcement Officer and resisting arrest with violence.

[Doc. 54-1 at 10-11]. After receiving the surveillance video from the convenience store, Wagner supplemented his report, again stating that "you can see the female exit the

truck, aggressively slam the door, rip her Driver's License out of my hands, and push me with her hand." *Id.* at 15.

However, the statement that Plaintiff shoved Wagner was not truthful. [Doc.54-2 at 129:9-16, 131:2-5 and 131:12-132-6; Doc.54-3 at 55:13-56:9; Doc.54-4 at 67:6-12; Doc.54-6 at 39:7-16; Doc. 54-7a at 11:25-13:00; Doc. 54-7b at 21:6:15-21:6:25]. Likewise, Plaintiff did not resist an order to put her hands behind her back while she was on the ground. [Doc.54-2 at 136:17-137:8; Doc.54-3 at 83:9-17 and 90:21-91:18; Doc.54-5 at 45:21-46:4, 47:4-7 and 47:22-48:3; Doc.54-6 at 39:20-40:1; Doc. 54-7a at 11:25-13:00; Doc. 54-7b at 21:6:15-21:6:25]. The "resisting an officer with violence" felony charge was administratively closed on April 12, 2016, and the "battery on a law enforcement officer" felony charge was nolle prossed on August 12, 2016. [Doc. 61 ¶¶ 20, 21]. Wagner was subsequently terminated from his employment following an administrative investigation into the incident. [Doc.54-3 at 57:16-21 and 101:7-20] & [Doc.54-8].

*The Lawsuit*

Plaintiff filed this action on March 24, 2020, against Wagner and Sheriff Gualtieri, and amended the complaint on December 14, 2020. [Doc. 1; Doc. 33]. The Complaint alleges four counts against Wagner and two against Sheriff Gualtieri in his official capacity as Sheriff of Pinellas County. *Id.* ¶¶ 8-9, 31-65. **Count I** asserts a claim that Wagner used excessive force against Plaintiff in violation of 42 U.S.C. § 1983 and **Count II** asserts a claim against Wagner for false arrest in violation of 42 U.S.C.§ 1983. *Id.* ¶¶ 29-36; 37-43. **Count III** is a state law false arrest claim against Wagner. *Id.* ¶¶

6

44-49. **Count IV** asserts that Sheriff Gualtieri is vicariously liable for Wagner's false arrest of Plaintiff. *Id.* ¶¶ 50-57. Here, Plaintiff alleges that Wagner knew or should have known that he had no legal justification to arrest her and that his actions "were performed in the course and scope of his employment with the Pinellas County Sheriff's Office[.]" *Id.* ¶¶ 51-53. She further alleges that because Wagner did *not* act in bad faith, with malice, or in a manner of wanton or willful disregard for her rights or safety, Sheriff Gualtieri should be held legally responsible in his capacity as Wagner's employer. *Id.* ¶¶ 53-56. **Count V** asserts a battery claim against Wagner and **Count VI** seeks to hold Sheriff Gualtieri vicariously liable for that battery. *Id.* ¶¶ 58-63; 64-70. As in Count IV, Count VI alleges that Sheriff Gualtieri should be held legally responsible in his capacity as Wagner's employer because Wagner committed the battery during the course and scope of his employment as a Deputy for the Pinellas County Sheriff's Office and did *not* act in bad faith, with malice, or in a manner of wanton or willful disregard for Plaintiff. *Id.* ¶¶ 67-68.

Sheriff Gualtieri has now moved for summary judgment. [Doc. 55]. He argues that the state law battery (Count IV) and state law false arrest (Count VI) claims alleged against him in Plaintiff's Amended Complaint are barred by the doctrine of sovereign immunity in accordance with §768.28(9)(a), Fla. Stat. *Id.* at p. 13. He argues that he is immune from the claim for battery as all evidence and testimony points to the fact that Wagner intentionally used gratuitous and excessive force on Plaintiff and committed such acts with malice, bad faith, or in a manner exhibiting wanton and willful

disregard for her rights and safety when she was free to leave and was already walking away. *Id.* at p. 19. Moreover, he argues that the Mobil video unequivocally shows that Plaintiff never pushed Defendant Wagner or refused his order to give him her right hand. *Id.* As to the false arrest claim, Sheriff Gualtieri argues that Wagner falsified his arrest report and supplement because the record evidence indisputably shows that Plaintiff never pushed him, and she voluntarily gave him her right arm when ordered to do so. *Id.* at pp 19-21. He further argues that all record evidence and testimony undeniably show that Wagner arrested Plaintiff for two felonies based exclusively on the false statements in the arrest report and supplement, such that he is sovereignly immune. *Id.* at p. 21.

In response, Plaintiff argues that a reasonable jury could find that Wagner acted with malice or without malice, such that a jury question is presented. [Doc. 62 at pp. 3-4]. She specifically argues that no reasonable jury can find that Wagner's conduct was so aggravated that her battery claim must be asserted against Wagner alone, and not also against Gualtieri. *Id.* at p. 9. According to Plaintiff, Wagner contends that he felt something on his chest that night, his perception was that Plaintiff had pushed him, and a jury could find his perception was reasonable in light of the circumstances and that the use of force was not excessive. *Id.* at pp. 11-12. As to the false arrest claim, Plaintiff contends that there is no dispute that Deputy Wagner was within the course and scope of his employment with the Pinellas County Sheriff's Department, did not intentionally misstate the facts when he wrote his police report, and his perception that

8

Plaintiff pushed him would provide a valid legal basis for battery on a law enforcement officer. *Id.* at p. 17.

In reply, Sheriff Gualtieri argues that Plaintiff does not refute any of the material facts set forth in its motion and cites to cases which were decided at the dismissal stage—where allegations are taken as true. [Doc. 66 at pp. 1, 2]. In addition, he explains that the summary judgment record has been developed—including testimony from Plaintiff and Wagner as well as video evidence—and that the existence of bad faith, malice and/or willful and wanton disregard exercised by Wagner during the incident requires sovereign immunity be granted in his favor. *Id.* at p. 3. He further argues that Plaintiff's sworn deposition testimony that Wagner acted with 'bad faith', 'malice' and/or 'willful and wanton disregard' must be considered at summary judgment as she knew exactly what these terms meant when she testified in the affirmative at her deposition and the affidavit should be disregarded, to the extent it conflicts with the sworn testimony.[6] *Id.* at pp. 3-5. In addressing the battery claim, Sheriff Gualtieri notes that both Plaintiff and Wagner testified to Wagner's knowledge that his actions were likely to cause injury, yet Wagner still took them against Plaintiff unprovoked, and the Court cannot ignore this uncontradicted evidence. As to the claim for false arrest, Sheriff Gualtieri argues that Plaintiff's claim that Wagner

---

[6] Plaintiff's affidavit [Doc. 62-1] was not disregarded by the Court.  The Court construes Plaintiff's affidavit as providing an explanation of the answer she gave at the deposition regarding bad faith and malice.  Plaintiff explains that she is not an attorney and cannot opine as to the legal definitions of bad faith and malice.  As the individual arrested by Wagner, she can and did offer an opinion regarding Wagner's actions.

lawfully arrested her for obstruction or based on his perception that she shoved him is a concession that probable cause existed, thus barring her claims for false arrest. *Id.* at pp. 9-10.

## II.   LEGAL STANDARD

Summary judgment is appropriate only when the court is satisfied that "there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law" after reviewing the "pleadings, the discovery and disclosure materials on file, and any affidavits[.]" Fed. R. Civ. P. 56(c)(2).  The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S. Ct. 2548. "Only when that burden has been met does the burden shift to the non-moving party." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

Generally, "the nonmoving party must set forth specific facts showing there is a genuine issue for trial[,]" in order to survive summary judgment. *Johnson v. New Destiny Christian Ctr. Church, Inc.*, No. 19-11070, 2020 WL 5289881, at *3 (11th Cir. Sept. 4, 2020) (citing *Anderson*, 477 U.S. at 249-50). "[U]nsupported 'conclusory allegations' do not suffice." *Middlebrooks v. Sacor Fin., Inc.*, 775 F. App'x 594, 596 (11th

Cir. 2019). Likewise, "[a] 'mere existence of a scintilla of evidence' cannot suffice to create a genuine issue of material fact." *Johnson*, 2020 WL 5289881, at *3 (quoting *Anderson*, 477 U.S. at 252).

## III.   DISCUSSION

"The doctrine of sovereign immunity, which provides that a sovereign cannot be sued without its own permission, ... was a part of the English common law when the State of Florida was founded and has been adopted and codified by the Florida Legislature." *Am. Home Assurance Co. v. Nat'l R.R. Passenger Corp.*, 908 So. 2d 459, 471 (Fla. 2005) (citing § 2.01, Fla. Stat. (2004)). The State of Florida has long waived sovereign immunity in tort actions for any act for which a private person under similar circumstances would be held liable. *Henderson v. Bowden*, 737 So. 2d 532, 534–35 (Fla. 1999) (citing Art. X, § 13, Fla. Const.; § 768.28, Fla. Stat. (1995)); *Florez v. Broward Sheriff's Off.*, 270 So. 3d 417, 420 (Fla. 4th DCA 2019).

Pursuant to § 768.28(9), Florida Statutes:

> No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. . . . *The state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of her or his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.*

(*emphasis added*).[7] The agency or the employee can be held liable under Florida law, but not both. *McGhee v. Volusia Cty.*, 679 So. 2d 729, 733 (Fla. 1996). Additionally, the employing agency is immune as a matter of law if the acts are so extreme as to constitute a clearly unlawful usurpation of authority the deputy does not rightfully possess or if there is not even a pretense of lawful right in the performance of the acts. *Id.*

### Battery

Count VI of the Amended Complaint alleges that Wagner battered Plaintiff and that Sheriff Gualtieri is liable in his capacity as Wagner's employer. [Doc. 33 ¶ 65]. It further alleges that the use of force by Wagner was excessive and objectively unreasonable and occurred during the course and scope of Wagner's employment as a deputy for the Pinellas County Sheriff's Office, without bad faith or malicious

---

[7] In *Lemay v. Kondrk*, 923 So. 2d 1188, 1191 (Fla. 5th DCA 2006), the Court explained:

> Willful and wanton conduct is generally something more than ordinary negligence but less than deliberate conduct. (Citation omitted). Most definitions of willful or wanton conduct require that it appear that the defendant had knowledge of existing conditions, was conscious from such knowledge that injury would likely or probably result from his conduct, and with reckless indifference to the consequences consciously and intentionally does some wrongful act or omits to discharge some duty which produces the injurious result.

*See also Tompkins-Holmes v. Gualtieri*, No. 8:17-CV-52-VMC-AEP, 2018 WL 4568868, at *13 (M.D. Fla. Mar. 16, 2018) ("A state employee acts with willful and wanton disregard of human rights and safety where he 'knew, or reasonably should have known in light of the surrounding circumstances, that his conduct would naturally or probably result in injury and, with such knowledge, disregarded the foreseeable injurious consequences.' ").

purpose and not in a manner exhibiting wanton and willful disregard for human rights, safety and property. *Id.* ¶¶ 66-67. A battery consists of the intentional infliction of a harmful or offensive contact upon the person of another. [8] *Sullivan v. Atl. Fed. Sav. & Loan Ass'n.*, 454 So. 2d 52, 54 (Fla. 4th 1984). "While battery is an intentional tort, the [employer] may be held liable for an employee's intentional act(s) as long as the employee is acting within the course and scope of his employment and the act or omission is not committed in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of the plaintiff's rights." *City of Boynton Beach v. Weiss*, 120 So. 3d 606, 611 (Fla. 4th DCA 2013).

Sheriff Gualtieri argues that the disproportionate and unnecessary force exercised by Wagner can only equate with the kind of malicious, bad faith or willful and wanton conduct that requires granting sovereign immunity under §768.28(9)(a), Fla. Stat. [Doc. 55 at p. 15]. He further points out that Plaintiff definitively claims that she never shoved Wagner and Wagner has no proof she actually did; that Wagner used force on Plaintiff in reaction to the alleged shove; and that Wagner agrees and admits that Plaintiff freely gave him her right hand when ordered to do so. *Id.* at pp. 14-15.

The evidence that Plaintiff did not shove Wagner is uncontroverted. After Wagner ordered Plaintiff to exit the truck, he informed her that she was free to leave, and he held out her driver's license for her to retrieve. [Doc. 61 ¶¶ 13, 15]. She exited

---

[8] The elements of this cause of action have not been placed in issue by the motion before the Court.

the truck, slammed the door, grabbed her driver's license from Wagner, turned away and began to quickly walk away from him. *Id.* ¶¶ 16, 18. The surveillance video from the convenience store shows that Plaintiff did not shove Wagner. [Doc. 54-7b at 21:6:15-21:6:25]. Wagner himself admitted that the video does not show he was shoved by Plaintiff. [Doc.54-3 at 82:7-15]. Plaintiff was then forcibly taken to the ground, face first, after Wagner grabbed her from behind and slammed her into the truck. [Doc 54-7a at 12:00-13:00; Doc.54-2 at 105:4-16, 74:11-18, and 75:3-20; Doc.54-3 at 89:24-90:7; Doc.54-3 at 47:23-48:4 and 48:24-49:1; Doc.54-5[9] at 9:17-20; Doc.54-6[10] at 14:8-14, 15:5-15, and 15:25-17:5]. Once on the ground, Plaintiff voluntarily placed her hands behind her back. [Doc.54-7a at 12:00-13:00; Doc.54-2 at 108:7-15; Doc.54-3 at 91:12-18; Doc.54-5 at 47:5-7 and 47:20-48:3]. Wagner fell on top of Plaintiff, used his body weight to pin her to the ground, with a knee on her lower back, and continued to push her face to the ground. [Doc.54-7a at 12:00-13:00; Doc.54-2 at 75:23-24, 77:4-18, 78:4-20, 92:2-18, 96:15-17, and119:4-24; Doc.54-3 at 82:24-83:8 and 51:19-25; Doc.54-4 at 19:23-20:3 and 21:3-12; Doc.54-5 at 19:11-20:14; Doc.54-6 at 18:20-19:15 and 20:3-8]. Taken in the light most favorable to Plaintiff, the evidence is that she did not resist Wagner at any time during his use of force and she voluntarily cooperated once she was taken to the ground.

[9] Doc. 54-5 is Wayne Wagner's sworn statement taken by Sergeant Tammy Richardson and Corporal Mark Kolenda, of the Pinellas County Sheriff's Office Professional Standards Bureau.

[10] The exhibit at Doc. 54-6 is Plaintiff's sworn statement taken by Sergeant Tammy Richardson of the Pinellas County Sheriff's Office Professional Standards Bureau.

The Court acknowledges that Wagner "clearly had the lawful authority to restrain arrestees, detain them, or even respond with force in appropriate situations" and that "[h]is office gave him that authority." *McGhee*, 679 So. 2d at 733. However, based on the evidence presented, no reasonable jury could find that the force Wagner used was reasonable under the circumstance. Likewise, no reasonable jury could find that Wagner did *not* act with wanton and willful disregard of Plaintiff's rights and safety. *Lemay*, 923 So. 2d at 1191 (requiring that actor knew injury would likely or probably result from conduct and with reckless indifference to the consequences, consciously and intentionally engaged in that conduct which resulted in injury); *Tompkins-Holmes*, 2018 WL 4568868 at *13. Wagner threw Plaintiff so hard against the truck the impact caused the truck to move. [Doc.54-2 at 105:4-16; Doc.54-3 at 89:24-90:7]. And after Wagner had taken Plaintiff to the ground, she voluntarily placed her arms behind her back, but he continued to push her head into the pavement— while pinning her down with his body weight and his knee in her back. Wagner's actions show a clear disregard of Plaintiff's rights and safety.  Even accepting as undisputed Wagner's testimony that his perception that night is that Plaintiff had pushed him, clear evidence shows that he continued to use force after the perceived need for the use of such force ceased to exist. [Doc 54-3 at 45: 9- 46: 4].

Plaintiff's argument that no reasonable jury could find that Wagner's conduct was so aggravated that the claim for battery must be asserted against Wagner only is without merit. The video evidence in this case belies the assertion that Plaintiff aggressively resisted Wagner's use of force and continued to pull away. In fact, the

15

video shows that Wagner slammed Plaintiff into the side of the truck without a warning or command. Once she was on the ground, he continued to apply force to her even though she voluntarily placed her hands behind her back.  This evidence can only equate with the kind of intentional, malicious misconduct by an employee that does not give rise to liability against the employer under Florida's waiver of sovereign immunity statute. Therefore, the claim for battery against Sheriff Gualtieri will not be allowed to proceed to a jury. It is barred by sovereign immunity. The undisputed evidence reflects that Wagner acted in bad faith, with malice, and/or in a manner exhibiting wanton and willful disregard of Plaintiff's rights, safety, and property.

## <u>False Arrest</u>

Plaintiff seeks to hold Sheriff Gualtieri liable for false arrest in Count IV of the Complaint. "False arrest is defined as the unlawful restraint of a person against that person's will." *Willingham v. City of Orlando*, 929 So. 2d 43, 48 (Fla. 5th DCA 2006) (citing *Johnson v. Weiner,* 155 Fla. 169, 19 So.2d 699 (1944)). The tort of false arrest "requires proof of '1) the unlawful detention and deprivation of liberty of a person 2) against that person's will 3) without legal authority or color of authority and 4) which is unreasonable and unwarranted under the circumstances.' "[11] *Florez*, 270 So. 3d at 421. "In a false arrest action ... the plaintiff is required only to establish imprisonment

---

[11] Sheriff Gualtieri contends in his reply [Doc. 66 at pp. 9-10] that Plaintiff's claim for false arrest is barred because Plaintiff concedes that probable cause existed for an arrest for obstruction or based on Wagner's perception that she shoved him. This argument was not raised in Sheriff Gualtieri's motion for summary judgment. *See* Doc. 55. Thus, it will not be addressed by the Court, as it cannot be raised for the first time in a reply.

contrary to his will and the unlawfulness of the detention.... Probable cause may then be raised and proved by the defendant, as an affirmative defense." *Rivers v. Dillards Dep't Store, Inc.*, 698 So. 2d 1328, 1331 (Fla. 1st DCA 1997).

As with the claim for battery, the Sheriff argues that he is immune from this claim because Wagner's actions were willful and wanton. [Doc. 55 at pp. 19-22]. Sheriff Gualtieri argues that he is entitled to sovereign immunity on the false arrest claim because Wagner falsified his arrest report.[12] Indeed, the false statements in the arrest report are: (1) "and with her right hand, shoved me" [Doc. 54-1 at p. 10]; and (2) "while on the ground, Paige resisted orders to put her hands behind her back" [Doc. 54-1 at p. 11]. Wagner's arrest report was written several hours **after** the arrest of Plaintiff. [Doc. 54-3 at p. 55]. The statements in the report are consistent with Wagner's perception of being shoved by Plaintiff, which would provide a basis for Plaintiff's arrest for battery on a law enforcement officer.

The record also reflects that Wagner watched the Mobil video a month and two days **after** the arrest of Plaintiff and prior to supplementing his arrest report. [Doc. 54-3 at pp. 74-75]. Wagner supplemented his arrest report and again stated that "you can see the female exit the truck, aggressively slam the door, rip her Driver's License out

---

[12] Sheriff Gualtieri's reliance on *Printemps v. Miami Dade Cty., Fla.*, No. 1:17-CV-20268-UU, 2017 WL 2555631, at *1 (S.D. Fla. June 9, 2017) is misplaced. There, the arresting officer was not present at the scene, did not observe any of the facts, and did not interview any witnesses present at the scene prior to arresting Printemps for aggravated battery with a motor vehicle and criminal mischief. The complaint alleged that the officer created facts, manufactured evidence, and knowingly made false statements to prosecuting authorities in order to have the plaintiff arrested at the behest of his friend, who had a dispute with the plaintiff regarding a sprinkler.

of my hands, and push me with her hand." [Doc. 54-1 at p. 15].  At his deposition, however, Wagner admitted that the Mobil video referenced in his supplemental report does not show Plaintiff shoving him. [Doc. 54-3 at pp. 87-89].

In response, Plaintiff argues sovereign immunity does not apply because it is not disputed that Wagner was within the course and scope of his employment at the time of the arrest and that Wagner arrested Plaintiff based on his perception that night that she pushed him—which would provide a valid legal basis for the arrest. Further, Plaintiff contends that Wagner testified that he did not intentionally misstate the facts when he wrote his police report, and there is no evidence Wagner arrested Plaintiff with ill will, hatred, spite, or an evil intent. [Doc. 62 at pp. 16-18]. Plaintiff also argues that the post arrest actions are not relevant as the violation had already occurred. *Id.* at pp. 17-18.

Defendant Wagner arrested Plaintiff for "battery on a law enforcement officer" and "resisting an officer with violence." [Doc. 61 ¶ 19]. "The elements of battery on a law enforcement officer are 1) knowingly 2) actually 3) intentionally 4) touching or striking 5) against the will 6) of a law enforcement officer 7) engaged in the lawful performance of his duties." *State v. Henriquez*, 485 So. 2d 414, 415 (Fla. 1986) (citing §§ 784.03 and 784.07, Fla. Stat. (1983)). Wagner testified that his perception on the night of the incident is that after Plaintiff exited the vehicle and retrieved her driver's license, she shoved him. [Doc 54-3 at 45: 9 - 46: 4]. As already discussed, the surveillance video reflects otherwise—Plaintiff did not shove Wagner, and Wagner admitted that the video did not show her shoving him. [Doc. 54-7b at 21:6:15-21:6:25;

Doc.54-3 at 82:7-15]. Although the evidence is clear on this point, Wagner's testimony that he felt something on his chest and perceived that Plaintiff had pushed him is unrefuted. This raises an issue as to whether Wagner had a valid legal basis to arrest Plaintiff for battery on a law enforcement officer. *See United States v. Gonzalez*, 969 F.2d 999, 1004 (11th Cir. 1992) ("The Supreme Court has repeatedly recognized the need to allow some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests and executing search warrants.") (quotation omitted); *State v. Wimberly*, 988 So. 2d 116, 119 (Fla. 5th DCA 2008) ("[A]n officer's mistake of fact does not necessarily render his actions unreasonable").

A jury may very well believe Wagner's testimony that he felt something on his chest and perceived that Plaintiff had pushed him, such that he had probable cause to arrest her—though mistaken. As such, summary judgment is not appropriate as to the false arrest claim against Sheriff Gualtieri, to the extent the claim is based on the arrest of Plaintiff for battery on a law enforcement officer. Construing the facts in Plaintiff's favor, a genuine issue of material fact exists as to whether Wagner arrested Plaintiff for battery on a law enforcement officer in bad faith, with malice, and/or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. A reasonable jury could find that Wagner did not act in bad faith, with malice, and/or in a manner exhibiting wanton and willful disregard of human rights, safety, or property when he arrested Plaintiff for battery on a law enforcement officer.

The Court agrees, however, that sovereign immunity bars the false arrest claim to the extent that the claim is based on Plaintiff's arrest for resisting an officer with

violence.   "The elements of resisting an officer with violence are   1)   knowingly   2) resisting, obstructing or opposing a law enforcement officer 3) in the lawful execution of any legal duty 4) by offering or doing violence to his person." *Henriquez*, 485 So. 2d at 415 (citing § 843.01, Fla. Stat.); *Yarusso v. State*, 942 So. 2d 939, 942 (Fla. 2d DCA 2006) (stating same).

The video clearly shows that Plaintiff did not resist Wagner at any time during Wagner's use of force and she voluntarily cooperated once she was taken to the ground. In fact, she voluntarily placed her hands behind her back once she was lying face down on the ground. [Doc.54-7a at 12:00-13:00; Doc.54-2 at 108:7-15; Doc.54-3 at 91:12-18; Doc.54-5 at 47:5-7 and 47:20-48:3]. It is also undisputed that in his arrest report, Wagner stated that he "ordered [Plaintiff] to the front of the vehicle multiple times as she continued to try and forcibly pull away from [his] grip" and "[she] refused to comply with multiple lawful orders to get to the ground." [Doc. 54-1 at 10-11]. Wagner continued this same narrative in a supplement to the arrest report, even after reviewing the surveillance video from the Mobil store and despite its depictions to the contrary. *Id.* at 15. No reasonable jury could find that Wagner did not act in bad faith, with malice, or in a manner exhibiting wanton and willful disregard of Plaintiff's rights, safety, and property. The unrefuted evidence shows that Plaintiff did not resist Wagner with violence. As such, Sheriff Gualtieri is entitled to summary judgment based on sovereign immunity as to this aspect of the claim for false arrest. No genuine issue of material fact exists as to whether Wagner acted in bad faith, with malice,

and/or in a manner exhibiting wanton and willful disregard of Plaintiff's rights, safety, and property when arresting her for resisting an officer with violence.

Accordingly, it is hereby **ORDERED**:

1. Sheriff Bob Gualtieri's Dispositive Motion for Summary Judgment [Doc. 55] is granted-in-part. Summary judgment is granted as to the claim for battery in Count VI. Summary judgment is also granted as to the claim for false arrest in Count IV, to the extent the claim is premised on Plaintiff's arrest for resisting an officer with violence.

2. A judgment in favor of Defendant Sheriff Bob Gualtieri and against Plaintiff Paige Laine Khyel Taylor, as to Count VI, will be entered at the conclusion of this litigation.

3. The Court will schedule a status conference to set a trial date as to the remaining claims, including those asserted against Defendant Wayne Wagner.

**DONE AND ORDERED** in Tampa, Florida on February 11, 2022.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any